IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARCELINA MARTINEZ,

     Plaintiff,

v.                                                                                    Case No. 1:21-cv-01186-WJ-GBW

ERIC D. HOUSER, A LAW
CORPORATION F/K/A/ HOUSER &
ALLISON, APC; HOUSER LLP;
SOLOMON KROTZER; JOHN DOES 1-10,

     Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [Doc. 5]**

     THIS MATTER comes before the Court upon motion by Defendants Eric D. Houser, A

Law Corporation, Houser LLP, and Solomon Krotzer ("Defendants") to dismiss this case with

prejudice pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1), 12(b)(5), and 12(b)(6).

Doc. 5 ("Motion") at 1. Plaintiff Marcelina Martinez is proceeding *pro se*. Having reviewed the

parties' submissions and the applicable law, the Court finds that the Motion is well-taken and

therefore **GRANTS** dismissal for lack of standing. As an alternative ruling on the Fair Debt

Collection Practices Act claim, even if standing is present, the statute of limitations has passed.

**BACKGROUND[1]**

---

[1] The Court takes judicial notice of facts in the public record, including the state court
proceedings and corporate documentation attached to the Motion as well as its response and
reply. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008) (taking judicial notice of
facts in the public record does not convert a motion to dismiss into a motion for summary
judgment).

This case stems from a foreclosure action that, at its inception, did not involve any of the parties to this case. On October 8, 2015, Ditech Financial LLC FKA Green Tree Servicing LLC ("Ditech Financial") filed a complaint in New Mexico state court. Doc. 5-1 at 1. Ditech Financial was represented by Jennifer L. Isom of Rose L. Brand and Associates, P.C. *Id.* Ditech Financial sought to foreclose on a mortgage after the borrower, then-eighty-year-old Rose Martinez, allegedly failed to make payments and fell into default. *Id.* at 1–2, 9.

Marcelina Martinez is Rose Martinez's daughter and had limited power of attorney over her mother's affairs, including affairs related to her domicile. *Id.* at 9. Marcelina intervened based on her interests as—among other things—the holder of a quitclaim deed to the property recorded January 12, 2015, her mother's heir, and the recipient of her mother's power of attorney. *Id.* at 9– 12.

The litigation proceeded. On August 1, 2018, Houser & Allison, APC entered its appearance and moved jointly with Rose L. Brand and Associates, P.C. to substitute counsel for Ditech Financial. *Id.* at 13–15. On November 20, 2018, the court held a hearing on this matter and others, but it did not issue an order right away. On December 5, 2018, the court referred the matter to its Foreclosure Settlement Program. *Id.* at 21–27. The case was stayed during the period of these negotiations. *Id.* As of June 24, 2020, the parties had reached an impasse and settlement talks ended; the court then lifted its stay and the case proceeded. *Id.* at 28–29.

During the settlement negotiations period between December 5, 2018 and June 24, 2020, several changes took place. First, on January 23, 2019, the court ruled on the substitution question for which it had held a hearing before the stay began. *Id.* at 16–18. This ruling allowed substitution of counsel, so Rose L. Brand and Associates, P.C. left the case and Houser & Allison, APC took over as counsel, with Mr. Solomon Krotzer as one of the attorneys handling the case. *Id.* at 17.

Additionally, the ruling allowed substitution of *plaintiff* pursuant to an earlier motion; Ditech Financial left the case and MTGLQ Investors, LLP became the new plaintiff which Houser & Allison, APC represented. *Id.*[2]

Key to the present litigation is the fact that during settlement negotiations, the law firm representing the foreclosure plaintiff underwent some structural changes. On July 14, 2019, Houser & Allison, APC renamed itself Eric D. Houser, A Law Corporation. Doc. 11-2 at 17. This entity became one of the partners composing Houser LLP. Doc. 12 at 4. On November 9, 2019, Houser LLP submitted a Foreign Limited Liability Partnership Registration Form to the New Mexico Secretary of State. Doc. 12-3. On February 3, 2020, the New Mexico Secretary of State sent a certificate confirming registration as of February 3, 2020. Doc. 12-4. Mr. Krotzer filed a notice in the foreclosure case in state court to this effect on November 23, 2020. Doc. 5-1 at 19–20.

Plaintiff asserts that Defendants have deceived her in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by misrepresenting the identity of their employer, which she claims was not authorized to do business in New Mexico due to the timing of the corporate restructuring efforts and therefore could not represent the foreclosure plaintiff during settlement negotiations. Doc. 1 ¶ 141. Plaintiff also expressed concerns that she was not negotiating with the true foreclosure plaintiff because the loan servicer purported to act on the named plaintiff's behalf. *See id.* ¶ 116. Plaintiff also asserts that Defendants purposely misled her through the same conduct in violation of the New Mexico Unfair Trade Practices Act ("NMUPA"), NMSA 57-12-1 *et seq.* Doc. 1 ¶¶ 161–68.

## LEGAL STANDARD

---

[2] Subsequently, U.S. Bank Trust National Association, as Trustee of the Chalet Series IV Trust became the plaintiff instead. *See, e.g.*, Doc. 11-1; Doc. 11-2; Doc. 12-1.

Rule 12(b)(6) allows a party to move to dismiss a case for failure to state a claim upon which relief can be granted. When ruling on such a motion, a court accepts "all well-pleaded factual allegations in the complaint" and construes them "in the light most favorable" to the plaintiff. *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1305 (10th Cir. 2020). However, a court need not accept "a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the plaintiff must put forth facts stating a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While plausibility is not the same as probability, it is more than a "sheer possibility." *Id.* Plaintiffs proceeding *pro se* must follow the same rules, but their pleadings are construed liberally. *Garrett v. Selby Connor Maddus & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## DISCUSSION

### I.    Standing

Defendants challenge Plaintiff's standing. Article III standing is a constitutional requirement to bring a case before a federal court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff has Article III standing when she "has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020). The plaintiff bears the burden of proving standing by pleading facts to support each element. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016).

Here, Plaintiff's injury is unclear. In her response, she asserts that she "has been injured by not only being forced to defend the amended action but also by being forced to defend the property, which is rightfully hers, which might have turned out differently had she been negotiating with the correct party." Doc. 11 at 6. She identifies Mr. Krotzer's

fraudulent misrepresentations that, 1) He was authorized to engage in settlement negotiations during the period of time when he was not employed by any legal entity authorized to transact business in New Mexico and, 2) the party he claimed to represent was not actually the named plaintiff. As a result of this conduct, Marcelina's offers of settlement were denied and thus she has been forced to engage in litigation with a party that is not actually entitled to the relief it requested through its Amended Complaint.

*Id.* at 9. That is, Plaintiff claims that her injury is that she could not reach a settlement because she was negotiating with an attorney who lacked the authority to settle or who purported to represent a party that was not a proper plaintiff.

Assuming for a moment that Plaintiff's first assertion is true—that Mr. Krotzer had no authority to represent the party on whose behalf he spoke during negotiations—this fact would not cause Plaintiff any harm. An attorney's actions bind his client, even if the client disagrees with those decisions; the client's recourse in such a case is a malpractice suit against the attorney. *Gripe v. City of Enid, Oklahoma* addresses this question clearly:

Those who act through agents are customarily bound by their agents' mistakes. It is no different when the agent is an attorney. When an attorney drafting a contract omits an important clause, the client who signs the contract is bound. When a trial attorney is poorly prepared to cross-examine an expert witness, the client suffers the consequences. (It should be noted, however, that the mistreated client is not totally without a remedy. There may be a meritorious malpractice claim against the attorney.)

312 F.3d 1184, 1189 (10th Cir. 2002). Therefore, whether Mr. Krotzer had authorization or not, any settlement to which he agreed would have bound his client. His authorization, the corporate structure of his law firm, and his firm's ability to negotiate a settlement in New Mexico are matters in which his own client undoubtedly takes an interest, but these facts have no bearing on Plaintiff's ability to settle.

Furthermore, the foreclosure action is against Plaintiff's mother, who signed the promissory note and incurred the debt, a fact problematic for Plaintiff's standing. *See Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, ¶¶ 32–33, 166 P.2d 1091 (Ct. App. 2007) (NMUPA

"contemplates a plaintiff who seeks or acquires goods or services"). Plaintiff cannot settle someone else's debt, except possibly through her power of attorney over her mother's affairs, and Plaintiff has not explained the extent of that power in the pleadings here or given any indication that this lawsuit is on behalf of her mother rather than herself. Therefore, Plaintiff herself, in her own capacity, could not have settled the foreclosure action against her mother regardless of the foreclosing plaintiff's actions. Being unable to settle a case that Plaintiff never had the authority to settle in the first place is not a concrete, particularized injury sufficient to confer standing.

Regarding Plaintiff's second assertion—that the party Mr. Krotzer claimed to represent was not the named plaintiff in the foreclosure action—Jeff Harrison's affidavit disproves this point. Plaintiff's argument appears to be that because Mr. Krotzer acted on behalf of the foreclosure plaintiff's loan servicer, SN Servicing Corporation ("SNS"), the named foreclosure plaintiff, U.S. Bank National Trust Association, as Trustee of the Chalet Series IV Trust ("Trust"), was not participating in settlement negotiations or would not be bound by a settlement agreement. *See* Doc. 1-1 ¶¶ 110–116. However, the affidavit by SNS's Asset Manager, Jeff Harrison, indicates that SNS is the Trust's loan servicer and has the authority "to retain counsel to prosecute foreclosures of Trust loans that are in default." Doc. 12-1 at 2. This affidavit therefore establishes that SNS may act on the Trust's behalf in the foreclosure matter, so it does not matter that SNS is not the named party; the named party has given SNS permission to litigate on its behalf.[3]

As a helpful analogy, courts have found that borrower-plaintiffs lack standing to challenge whether their promissory note was validly assigned from one defendant to another because those

---

[3] Plaintiff seeks evidence of this agency relationship between Jeff Harrison, SNS, and the Trust. Doc. 1-1 ¶ 116. An affidavit is itself a form of evidence. *See, e.g., Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1171 (10th Cir. 2011) (referring to "affidavits or other evidence"); *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987) (allowing affidavits to serve as evidence of jurisdiction).

borrowers are not parties to the assignment. *See, e.g., Davidson v. Bank of Am. N.A.*, Civil Action

No. 14-cv-1578, 2016 WL 11383922, at \*8 (D. Colo. Feb. 1, 2016). Similarly, here, Plaintiff

cannot challenge the validity of the opposition's legal representation or the agency relationship

between the named foreclosure plaintiff and its loan servicer. She was not a party to the relevant

agreements. Plaintiff therefore faces no concrete and particularized injury and lacks standing to

pursue her claims of FDCPA and NMUPA violations stemming from Defendants' conduct during

settlement negotiations.[4]

## II.     FDCPA Statute of Limitations

Plaintiff cites to a case observing that some courts categorize § 1692e rights as substantive

in nature, which means that a violation of this provision is itself an injury sufficient to confer

standing. *See* Doc. 11 at 13–14; *see also Zuniga v. TrueAccord*, Civ. No. 18-683, 2020 WL

2840318, at \*5–6 (D.N.M. June 1, 2020); *Irvine v. I.C. Sys., Inc.*, 198 F. Supp. 3d 1232, 1237 (D.

Colo. 2016). The parties do not cite, and the Court has not found, any controlling authority on this

matter. However, even if the Court followed the line of argumentation in these cases, found that

non-debtors still had FDCPA standing under § 1692e pursuant to *Montgomery v. Huntington Bank*,

346 F.3d 693 (6th Cir. 2003), and found that Defendants qualified as debt collectors pursuant to

*Heintz v. Jenkins*, 514 U.S. 291 (1995) such that Plaintiff would have standing, the statute of

limitations still bars Plaintiff's FDCPA claim.

Plaintiff alleges that the fraudulent misrepresentations took place during settlement

negotiations, which ended on June 24, 2020 when the court lifted its stay. Doc. 1-1 ¶ 79; Doc. 11

at 10 ("Marcelina filed her lawsuit within the year statute of limitations upon discovering

---

[4] Plaintiff's response occasionally mentions an intent to file an amended complaint in this case. *See* Doc. 11 at 8–9. Without standing, a court has no authority to rule on a case, so amendment would be improper here.

Defendant Krotzer's fraudulent misrepresentations *during settlement negotiations*.") (emphasis added). Even using June 24, 2020 as the start of the limitations period for the sake of argument, Plaintiff did not file her complaint until November 19, 2021. Doc. 1 at 1. This filing surpasses the one-year statute of limitations. *See Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) (one year FDCPA limitations period begins on date of violation, not discovery).

Plaintiff argues in favor of equitable tolling given the alleged fraud in this case. Doc. 11 at 10. However, her complaint does not indicate a date of discovery. In fact, the complaint asserts that Mr. Krotzer's email signature changed to Houser LLP—thereby potentially alerting Plaintiff to the alleged fraud—as early as December 6, 2019. Doc. 1-1 ¶ 71. This assertion would render equitable tolling unhelpful here, even if it did apply. Plaintiff also asserts that violations "continue with each document filed into the action by Defendants," Doc. 11 at 10, but the complaint itself notes that Houser LLP registered to do business in New Mexico as of February 3, 2020, Doc. 1-1 ¶ 103. Therefore, it is unclear how the violations could be ongoing when registration was proper as of February 3, 2020. Additionally, a sworn affidavit as of December 11, 2020 indicates that the foreclosure plaintiffs authorize the representation in question. *See* Doc. 12-1. It is therefore not plausible that any alleged fraud is ongoing, so equitable tolling is again inapplicable here.

For the above reasons, the Court **GRANTS** Defendants' Motion to Dismiss. However, it dismisses without prejudice due to lack of standing. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006).

**IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE